## C. M. COX ET AL. v. JAMES LEDWARD ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF DELAWARE COUNTY.

Argued February 14, 1889—Decided February 25, 1889.

1. In an action of scire facias sur mortgage, where the plaintiff is proceeding as assignee for the benefit of the creditors of one of the owners of the mortgage, it is not error to admit in evidence under the plea of payment, the office inventory and appraisement of the assigned

Statement of Facts.

estate to show that the interest sought to be recovered had not been appraised as a portion thereof.

2. Nor is it error to admit in evidence the record entry of satisfaction of the interest, made by the assignor himself after the date of the assignment, as a self-disserving declaration, admissible not only against the assignor but against the assignee, when accompanied with instruction that the assignor had no right to make the entry if he had not received payment before the date of his assignment.

3. Where, in such case, the evidence is wholly circumstantial, some of the parties to the transaction being dead and the others therefore incompetent to testify, and the collateral facts are nearly all evidenced by writings, and form as a whole a fair basis for a conclusive inference of payment, it is not error to submit the question to the jury accompanied with the instruction that the burden of proof was upon the defendants.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 62 January Term 1889, Sup. Ct.; court below, No. 40 March Term 1887, C. P.

On March 24, 1888, a writ of scire facias sur mortgage was issued by Crosby M. Cox and Mattie A., his wife, in right of said wife, William A. Dobson and Kate E., his wife, in right of said wife, Anna W. Ledward, and William B. Broomall, assignee of John J. Ledward, against James Ledward, mortgagor, and the said Mattie A. Cox, Kate E. Dobson and Anna M. Ledward, terre-tenants. The sheriff returned the writ service accepted for the terre-tenants and nihil habet as to James Ledward. The terre-tenants pleaded, payment, payment with leave, etc.

At the trial on October 4, 1888, James Ledward "appeared" by counsel, who pleaded payment, payment with leave, etc.

The plaintiffs then offered in evidence a mortgage from James Ledward to Spencer McIlvain, dated July 24, 1876, securing the payment of $13,000, in five years from date, recorded; an assignment of the mortgage by Spencer McIlvain to Catharine Ledward, dated March 29, 1877, recorded; an assignment of the same mortgage, and the bond accompanying it, by Catharine Ledward to John J. Ledward, Mattie A. Cox, wife of Crosby M. Cox, Kate E. Ledward and Anna M. Ledward, the said Catharine Ledward reserving the interest on the principal of the debt secured and all rights and remedies for the collec-

tion thereof, during the term of her natural life, this assignment being dated May 1, 1880, acknowledged May, 15 1880, and recorded on May 19, 1880; and a general assignment for the benefit of creditors by John J. Ledward to William B. Broomall, dated August 19, 1884, recorded, with the admission of counsel that Catharine Ledward had died November 13, 1886.

Defendants' counsel objected to the mortgage of James Ledward to Spencer McIlvain going in evidence without the satisfaction entered on the record by John J. Ledward.

Plaintiff's counsel: The satisfaction was entered on March 3, 1885, after the assignment of August 19, 1884.

By the court: Let them all go in evidence; I hold the burden is on the defendants.

The plaintiffs then rested.

The defendants then showed by the proper records the facts following:

James Ledward, the mortgagor, died on January 9, 1877, leaving a widow, Catharine Ledward, a son, John J. Ledward, and three daughters, Mattie A. Cox, Kate E. Ledward (afterward Dobson) and Anna M. Ledward. On March 13, 1877, the mortgaged real estate was adjudged in proceedings in partition to John J. Ledward.

As of May 1, 1880, the widow Catharine, the owner of the mortgage by the assignment from Spencer McIlvain, assigned it to John J. Ledward and his sisters, as appeared in the plaintiffs' case; and, contemporaneously, there were entered upon the records, (1) a satisfaction of the recognizance in the Orphans' Court given by John J. Ledward in the partition proceedings, except the sum of $1,749.92, payable to each of the three sisters, with interest from May 1, 1880; (2) a mortgage by John J. Ledward to his three sisters, in $2,000, conditioned for the payment of interest to their mother for life and of $1,500 at her death to the sisters. The assignment of the mortgage to John J. Ledward, the satisfaction of the Orphans' Court recognizance, and the mortgage by John J. Ledward for $2,000, were all entered of record on May 19, 1880.

At this point the defendants offered in evidence the inventory and appraisement in the assigned estate of John J. Ledward, under an appointment of appraisers made on petition of

the assignee filed November 3, 1884, showing no appraisement of any interest of the assignor in the mortgage in suit.

Objected to.

By the court: Offer admitted; exception.[1]

On November 3, 1884, William B. Broomall, assignee of John J. Ledward presented his petition for leave to sell the mortgaged premises discharged of liens, under the act of February 17, 1876, but subject to the lien " of a certain mortgage, executed by James Ledward to Spencer McIlvain on July 24, 1876, conditioned for the payment of $13,000, and recorded," etc. An order of sale was granted in accordance with said petition, and a sale of the premises was made, returned and confirmed to Mattie A. Cox, Kate E. Dobson and Anna M. Ledward, followed by the deed of the assignor to said purchasers, dated December 20, 1884, subject to said mortgage.

On December 22, 1884, Mattie A. Cox, Kate E. Dobson and Anna E. Ledward conveyed the premises to Laura A. Ledward, wife of John J. Ledward, for $5,511.76, taking a purchase money mortgage to each grantor for her share of the entire purchase money.

Mattie A. Cox was then sworn as a witness for the defendants, but when it was shown that her brother John J. Ledward was dead, she was objected to as incompetent and her testimony excluded.

The defendants then proved by the recorder the signature of John J. Ledward to the following entry upon the record of the mortgage : " March 3, 1885, I hereby acknowledge to have received my share of this mortgage. [Signed] John J. Ledward," and offered the entry in evidence.

Objected to.

By the court: Offer admitted; exception.[2]

On January 9, 1888, after a sheriff's sale upon judgments in scire facias upon the purchase money mortgages given on December 22, 1884, to Mattie A. Cox, Kate E. Dobson and Anna M. Ledward, by Laura A. Ledward, the mortgagees received the sheriff's deed for the premises, and again had title thereto.

Upon the foregoing facts it was claimed on the part of the plaintiffs that, at the time the suit was brought, the mortgage upon which the writ issued belonged to William B. Broomall, assignee of John J. Ledward, Mattie A. Cox, Kate E. Dobson

Charge of Court below.

and Anna M. Ledward, and that the mortgaged premises belonged to Mattie A. Cox, Kate E. Dobson and Anna. M. Ledward.

The court, CLAYTON, P. J., charged the jury and answered the points presented as follows:

The question is: Has the interest in that $13,000 mortgage of John J. Ledward been satisfied before the assignment of his estate to Mr. Broomall? And that is the only question in the case. You can talk about it a week; you can cover the jury with books and documents; but, after all, there is but one question before the jury: has John J. Ledward's interest in that $13,000 mortgage been satisfied, in any way that was satisfactory to him, before he made his assignment to Mr. Broomall? His interest was the one fourth of it after his mother's death. That is the only question in the case. If you find from the evidence that it has; if the evidence satisfies you to a reasonable intent that Mr. Ledward did receive satisfaction for that mortgage in some way before he made the assignment to Mr. Broomall, then the defendants here are entitled to your verdict.

Now, what is the evidence? Mr. Ledward is dead; he cannot take the stand; the suit is between an executor and an administrator, and under the law the defendants cannot take the stand. The only witness who is free to tell you all he knows about it is Mr. Broomall. If he knows anything about it, it is his duty to inform you; if he does not do so, you are not to presume that he knows anything about it. It may be that he feels his duty as assignee is such as to prohibit him from voluntarily taking the stand and telling what he knows. In that event, when he was on the stand, the other side could have fully examined him; and I so expressed it. [Now the question is: From the evidence before you is there such evidence as to satisfy you to a reasonable intent—such evidence as will reasonably convince you—that that mortgage was satisfied, as far as Mr. Ledward was concerned, before he made his assignment.] [3] He has stated positively, by his solemn declaration under his hand, that it was satisfied; but unfortunately, when he made that declaration, he had no right to satisfy it unless it had been paid before. You are to decide that

question by the evidence in the case. It does not always fol-
low that a mortgage is paid on the day it is satisfied on the
record. Your experience will tell you that a mortgage may
be paid for years before it is satisfied on the record. It
must have been paid before you can compel the mortgagor to
satisfy it, and even then the law gives him eighty days before
he can be sued for not satisfying it. So, you see, the fact that
the satisfaction was not made before, is no positive evidence
that the mortgage hadn't been satisfied before that. Now you
understand me. The record shows an entry made by John J.
Ledward that he acknowledges himself to have received full
satisfaction for that mortgage. Now, the question is, when
did he receive it? and the mere fact that at the time he made
that declaration he had no right to receive it, is no positive
evidence that it had not been paid before, because a man is
not bound to enter satisfaction on the record until after he
receives actual satisfaction, and it often is the case, as I have
just remarked, that mortgages and judgments are not satisfied
of record on the day they are paid.

So you come back to the question: [Did Mr. Ledward
receive actual satisfaction before he made his assignment to
Mr. Broomall? If you find that he did, then your verdict
ought to be for the defendants.] [4] [The first evidence that it
has been satisfied at all is his declaration made at the time
when he had no right to enter satisfaction on the record; but
still, it is his declaration.] [5] He is dead; he cannot take the
stand to explain it, but the fact is there. He acknowledges
that he received satisfaction for that mortgage. Then, if that
were the only occurrence, it might, perhaps, be too doubtful
to convince you; and there ought, perhaps, to be some more
evidence than the mere fact that he entered satisfaction at a
time when he hadn't the right to receive it. [If he had re-
ceived it before, mark you, if it had been paid to him, or if it
had been in any way satisfied by any family arrangement
among those who owned the mortgage; if he had received
satisfaction before he made the assignment, there was nothing
wrong in him coming into court and making that declaration
just when he did; and, if he hadn't satisfied it until to-day,
but had received the money when he had the right to receive
it; if he were alive to-day he would have the right to satisfy

that mortgage, susceptible to proof that it had been actually paid or settled at a time when he had the right to receive the money. You have that fact to start with.] [6]

[What else have you? You have the fact that after he made his assignment, he appointed as his assignee a gentleman familiar with his father's affairs, the counsel of his father's estate, a gentleman who ought to have known, if he did not, how his father's estate had been settled. If he was the counsel for the estate, and if he represented all the parties interested in that estate, he certainly ought to have known where that estate went, and how it was settled. He appointed a gentleman who had been, or was, the counsel of his father's estate, as his assignee; he didn't appoint a stranger that knew nothing about his property; he appointed Mr. Broomall. Mr. Broomall, I suppose, came into court and asked the court to appoint two appraisers, who should appraise the estate of the assignor. Those appraisers, I suppose, if they did their duty, inquired what estate Mr. Ledward had. They were sworn to do that. If Mr. Broomall did his duty, he informed them of all the estate he knew that Mr. Ledward had. If Mr. Ledward was honest, it was for his interest to point out all his estate, for it went to pay his debts; it was his interest in law to inform his assignee and inform the appraisers where his property was. An appraisement was made, and it was filed; and it does not say a word about this property being Mr. Ledward's; not a word; it is perfectly silent. It tells you what personal estate he had; it does not name this.] [7] Now, that is the second piece of evidence that the counsel for the defendants rely upon.

Well, then, what is the third? [The third piece of evidence that they rely upon is, that when the assignee had the property for sale, he advertised it subject to a $13,000 mortgage, but he did not say that the $13,000 was due upon that mortgage. He told the purchaser that there was a $13,000 mortgage against the property and he must look out for that. It was the purchaser's duty to go and see the holder and ascertain what was due. While he did say it was advertised subject to a mortgage conditioned for the payment of $13,000, he didn't say it was subject to a $13,000 mortgage. He did not say that and didn't mean it. He meant that the mortgage was for

$13,000, and that the purchaser was taking it subject to what was due upon that mortgage, but in the same advertisement he names that property as belonging to the three children of Mr. Ledward, and does not name his assignee as having any interest in it.] [8]  [Now that is the third piece of evidence upon which they rely; and it does seem to me that these three pieces of evidence in the cause have some, at least, persuasive effect upon the evidence as to whether the mortgage had been satisfied in any way before Mr. Broomall became assignee. It seems to me there was enough to call upon Mr. Broomall, or any other person who knew anything about the case, to take the stand and tell all that he knew about it; and if it has the same effect upon your mind as upon mine, you may consider it, in the absence of evidence to the contrary, sufficient to rebut the presumption that it was not paid. If you find it sufficient to rebut that presumption, you may, in the absence of all evidence to the contrary, find for the defendants.] [9]

Now you are to judge of the weight of the evidence.  [It is for you, and if it satisfies you to a reasonable certainty that there has been some family arrangement or actual payment by which Mr. Ledward had received satisfaction of his share of that mortgage before his assignment was made; if you find that to be the case, then the verdict ought to be for the defendants;] [10] but, if it is not, and the presumption is that the whole mortgage is due, if it is not sufficient to overcome that presumption, then your verdict ought to be for the plaintiffs, I suppose for the amount of his interest. Have you fixed that?

Defendants' counsel: I suppose we would better take a general verdict for the defendants.

By the court: I say, then, gentlemen, if it is to be for the plaintiffs, then it is for the interest of Mr Ledward, which is the one fourth.

Plaintiffs' counsel: One fourth of $13,000?

By the court: One fourth of $13,000, with interest from his mother's death.

Plaintiffs' counsel: Which was November 13, 1886.

By the court: But if you find for the defendants, that it was satisfied, that in reality satisfaction was received before the assignment to Mr. Broomall, you may find a general verdict for the defendants. If you find with Mr. Broomall that it was

Charge of Court below.

not, that is it was not received until after the assignment was made to him, then you should find for the plaintiffs and assess the damages at one fourth of $13,000, with interest from the day of the death of the mother.

Plaintiffs' counsel: That is not true; it would divide the $3,250 between him and the three sisters. If they find for the defendants, should not the verdict be for three fourths of $13,000 with interest?

Defendants' counsel: Let them find for the defendants generally.

By the court: Let the jury, if they find for the plaintiffs, render a special verdict, and say that they find that John J. Ledward had received no satisfaction of that mortgage at the time he made his assignment, and then we can easily settle it.

Now, gentlemen, I will answer the points that have been submitted, and leave the case with you.

The plaintiffs' points are these:

1. Under all the evidence the verdict should be for the plaintiffs.

Answer: I decline to so charge you.[11]

2. All the evidence being in writing it is for the construction of the court, and the same is not sufficient evidence of payment or merger.

Answer: I decline to so charge you.[12]

3. There can be no merger of John J. Ledward's interest in the mortgage into his ownership of the land, on account of the life interest of Catharine Ledward in the mortgage.

Answer: That I affirm. That is to say, that when Mr. Ledward bought the property subject to the mortgage, it did not merge, because his mother had a lifetime interest there.

The defendants' points are these:

1. By the taking in the partition proceedings of the land described in the mortgage in suit, John J. Ledward became liable to pay the mortgage, and his subsequently acquiring an interest in the mortgage was an extinguishment of the mortgage to that extent, unless it be shown that it was not the intention of John J. Ledward to so extinguish it.

Answer: Well, I have already affirmed the plaintiffs' point, and I therefore decline this point.

2. The taking of the land in the partition proceedings; the

settlement made by John J. Ledward with his mother and sisters ; the giving of the recognizance and its subsequent partial satisfaction ; the giving of the $2,000 mortgage to his mother and sisters ; the proceedings in the assigned estate of John J. Ledward ; the failure to mention the $13,000 mortgage among the assets of the assigned estate ; the making of the conveyance by the assignee to the sisters of John J. Ledward, and the conveyance by them to his wife, and the taking of purchase money mortgages for the whole purchase money ; the acknowledgment by John J. Ledward, on the record, that his interest in the mortgage had been fully paid ; these, and all the other evidence in the case, are sufficient under all the evidence, to fully justify the jury in finding that the interest of John J. Ledward in the mortgage now sued upon, has been paid or extinguished, and fully sufficient to warrant the jury in rendering a verdict for the defendants.

Answer : Gentlemen, I will simply say that these facts may be considered by the jury as bearing upon the question of whether Mr. Ledward's interest in the mortgage has been satisfied in any way, and if so whether it was paid or satisfied before or after his assignment. They bear upon that question, and you may consider that if they are sufficient to satisfy you that he did receive satisfaction before he made his assignment, then you may find for the plaintiffs. I do not advise you that they are fully sufficient, but say that they are for you to consider, and if they are sufficient to satisfy you, then your verdict will be sustained.[13]

3. W. B. Broomall, the assignee of John J. Ledward, has the same and no greater rights, with respect to the fact of payment or extinguishment of this mortgage, than John J. Ledward himself would have, if he had not made an assignment and were now attempting to collect the amount of this mortgage from his sisters, and if the jury are sufficiently convinced from the evidence of the fact of payment, to find against John J. Ledward, were he the plaintiff, they should render a verdict against the assignee and in favor of the defendants now.

Answer : This third point I negative. I hold that Mr. Broomall has a greater right now in court than his assignor would have if he were here ; that his assignor would not be permitted to discontinue the suit or receive payment now ;

therefore the assignee has rights the assignor would not have. Mr. Broomall does not only represent the assignor, but he represents the creditors. While he acts for the assignor strictly, the rights may be identical; but when he acts for the creditors, he has a greater right than the assignee would have.

4. Where there are two lien creditors, one of whom is the debtor of the other, the debtor is not permitted by law to receive payment until his creditor has been fully paid, and if in this case John J. Ledward was indebted to his sisters, and they both held liens against the same property, he was not entitled to receive payment of his lien until his sisters had been paid their liens. The fact of such indebtedness in this case may be considered by the jury as bearing upon the question of payment or extinguishment of the mortgage in suit.

Answer: Well, gentlemen, I decline to affirm this point. I have said to you all that I think is material, and I decline to affirm that point. It comes back to the single question in the case, which I have already stated to you, and that is all there is in it, whether by any family arrangement or by an actual payment, Mr. Ledward had received satisfaction of his share of that $18,000 mortgage before he made the assignment. That is the question. Just keep that before you and direct the evidence in the case to that point, and you ought not to have any difficulty. As before stated, the onus is upon the defendants; they must satisfy you by sufficient evidence that it has been paid, and if the evidence satisfies you, you may act upon it. I inform you that if you find the question in favor of the plaintiffs that I have submitted, just come into court and state that you have found that question in favor of Mr. Broomall. If you find it against him, just come into court and find for the defendants. Do not bother yourselves with making calculations.[14]

The jury returned a verdict for the defendants. Judgment having been entered, the plaintiffs took this writ, assigning as error:

1, 2. The admission of defendants' offers. [1] [2]

3–10. The parts of the charge embraced in [ ] [3 to 10]

11, 12. The answers to the plaintiffs' points. [11] [12]

13, 14. The answers to the defendants' points. [13] [14]

*Mr. W. I. Schaffer* (with him *Mr. W. B. Broomall*), for the plaintiffs in error:

1. The circumstance that the inventory and appraisement of the assigned estate does not embrace the one fourth interest in the mortgage as an asset, does not permit an inference that that interest had been previously discharged. Treating the appraisement as a declaration of the assignee, the rights of creditors cannot thereby be affected. But it was not the assignee's declaration at all. The paper is executed by the appraisers and the assignee is in no way connected with it.

2. The entry of the satisfaction by the assignor on the record, was but a declaration, and being made after the date of the assignment, it cannot affect the holding of his assignee: Lancaster v. Smith, 67 Pa. 427; Brown v. Henry, 106 Pa. 262.

3. The remaining specifications of error are addressed to the submission of the question of payment to the jury, with no evidence to support it. The three circumstances adverted to in the charge as being such evidence have been considered in detail. They are, as stated above: (1) The inventory and appraisement of the assigned estate. If this paper has any relevancy to the case at all it must be considered as evidence of the fact that the mortgage existed at thirteen thousand dollars. (2) The unauthorized entry of satisfaction on the record of the mortgage, which is clearly no evidence of payment, having been made by John J. Ledward after he had parted with the mortgage, and when his wife had acquired title and he was interested to relieve her property of the claim of his creditors upon it. And (3) The advertisement of the property as subject to a thirteen thousand dollar mortgage belonging to Mattie A. Cox, Kate E. Dobson and Anna M. Ledward, of which there is no evidence whatever in the case.

*Mr. O. B. Dickinson* (with him *Mr. A. A. Cochran*), for the defendants in error:

1. An assignee for the benefit of creditors is not a purchaser for value, nor does he represent the creditors; he is an agent of the assignor and merely stands in his place: Ludwig v. Highley, 5 Pa. 137; Morris's App., 88 Pa. 379; Wright v. Wigton, 84 Pa. 166; Twelves v. Williams, 3 Wh. 485. Moreover, the assignor in this case had not by the assignment parted

with all interest in the goods and chattels assigned. He was still the owner, but had empowered his assignee to pay his debts out of the assigned estate, and was entitled to the residue himself, if there were any. He was therefore a party in interest, and his self-disserving admissions were properly admitted.

2. The schedule of debts returned by an insolvent is admissible as evidence, and the omission from it of a debt alleged to be due him is at least prima facie evidence that no such debt is due: Hart v. Newcomb, 3 Camp. 13; Nichols v. Downs, 1 M. & Rob. 13; Burrows v. Stevens, 39 Vt. 378; Wharton on Ev., §§ 1121, 1132, 1199; Reagan v. Grim, 13 Pa. 511. The principle evidently is, that a declaration made, if self-disserving, is admissible for the reason that self-interest supplies the absence of all other sanctions: Rossiter's App., 2 Pa. 371; Harrisburg Bank v. Tyler, 3 W. & S. 376; Riddle v. Dixon, 2 Pa. 375.

3. There was ample evidence to support the verdict, if a chain of circumstances is ever a safe basis for a judgment.

*Mr. Schaffer*, in reply:

An assignee is more than the agent of the assignor; he is a trustee for the creditors of the assignor, as well: Beans v. Bullitt, 57 Pa. 221. He is bound only by what the assignor has done prior to the assignment: Weiler v. Kershner, 109 Pa. 219. Being a trustee to convert and distribute, it cannot be within his powers as such trustee to destroy the assigned estate by his declarations: McKissick v. Pickle, 16 Pa. 140; Lobb v. Lobb, 26 Pa. 327; Clark v. Maguire, 35 Pa. 259; Orr's App., 7 W. N. 126.

OPINION, MR. JUSTICE MITCHELL:

This record is a legal curiosity. On a scire facias in a court of law, three owners of land are sued by themselves and one other, as joint holders of a mortgage upon their own land. Having thus, in advance of even the wave of legislative reform, brushed aside any little technicalities that might be supposed to stand in the way, the parties went into court, and the original owner of the land and mortgagor being also a party defendant, an appearance and plea were formally entered for him, although it is spread out on the face of the proceedings that he

had been dead more than eleven years before the writ issued. A jury was duly empaneled, and the parties, living and dead, entered on this mixed contest with themselves and each other. What the effect of a verdict and judgment against a dead man, under these circumstances, would have been, we are happily spared from considering, the jury having put an end to the contest by a verdict for defendants. A glimpse of other difficulties is also afforded, at the close of the charge, by the colloquy between court and counsel as to the form of the verdict, if found for the plaintiffs.

The proceedings, however, anomalous as they were, had a perfectly regular and legitimate object. Indeed they would have been highly creditable to the ingenuity of counsel, had they been invented between the date when provincial simplicity put an end to Gov. Keith's Court of Chancery, and the time when the legislature of the commonwealth waked up to the fact that equitable powers and process are a necessary part of legal machinery, in the complicated civilization of the present century. As it is, they seem to have been carried on by general agreement, and may stand as a survival of the makeshifts by which the early lawyers of Pennsylvania administered equity under the forms of the common law.

The history of the case contains a long and intricate recital of facts, the details of which have little importance, or even relevancy to the real controversy. A careful analysis, taking much more time than the case should have required, reduces the material facts to the following: John J. Ledward being the owner of certain mortgaged premises, became one of four joint owners of the mortgage, subject to a life interest in his mother; subsequently he made an assignment for the benefit of his creditors, and still later, entered satisfaction on the record as to his fourth of the mortgage. The other three holders of the mortgage had, in the meantime, become the owners of the mortgaged premises, and the present roundabout substitute for a bill in equity, was really a proceeding by the assignee for creditors, to charge the land with John J. Ledward's one fourth of the mortgage.

The only disputed question in the case was the satisfaction, in law or in fact, of John J. Ledward's interest in the mortgage. The learned judge promptly disposed of the legal

branch of the inquiry, by ruling that the intervening life interest prevented a merger; and then proceeded to state in very plain and forcible English, adapted to the understanding of the jury, all that was left for them: " The question is, has the interest in that $13,000 mortgage of John J. Ledward been satisfied before the assignment of his estate to Mr. Broomall? And that is the only question in the case. You can talk about it a week; you can cover the jury with books and documents, but after all there is but one question before the jury."

The assignments of error may be grouped into three classes. The first and second assignments relate to the competency of the inventory of John J. Ledward's assigned estate, and his entry of satisfaction on the record of the mortgage. The first was clearly competent. It showed that John J. Ledward, his assignee, and the appraisers, in making out a full inventory of his assigned estate, omitted any reference to his one fourth of the mortgage in suit, and thus tended to support the defendants' contention that it had been previously satisfied. The entry of satisfaction by John J. Ledward, after the assignment, may be more questionable, as it was, in one aspect, the declaration of an assignor after parting with his title. But that was not its real legal aspect. Ledward was not a vendor who would be estopped from discrediting his vendee's title, but an assignor, with a continuing resulting equity in the property, and his assignee had no independent rights of his own, but only those of his assignor and the creditors. Ledward's entry of satisfaction was therefore a declaration against his interest, and as such admissible, not only against him but against his assignee. Its admission, therefore, was not error, and was carefully guarded by the positive instruction to the jury that Ledward had no right to make the entry at the time he did, unless he had received satisfaction before his assignment.

The third to the tenth assignments, inclusive, are to parts of the charge, and all that need be said of them is, that the charge was correct in point of law, if sustained by the evidence, and this depends on its competency, which has already been discussed, and its sufficiency, which remains to be considered. Of the charge it may be said that some of the comments, notably those in the eighth assignment, are rather refined and subtle, and that as a whole it may be called a leading charge,

as it indicates very clearly to the jury how the judge thought they ought to find. But it leaves the jury clearly free to exercise their own judgment, and therefore did not exceed the legitimate privilege of the judge, especially in a case where the evidence was so nearly all in writing, as to lead the plaintiffs in their second point to ask the judge to take it from the jury and construe it himself.

The remaining assignments relate to the sufficiency of the evidence. It was wholly circumstantial, for the reason that all the parties to the transactions were either dead, or rendered incompetent by the death of the others. The only competent witness who might be supposed to have any personal knowledge was the assignee, who was the substantial plaintiff, and even if he had any knowledge he might well have considered himself restrained from testifying by professional obligations. The evidence therefore was naturally limited to a series of collateral facts, none of them conclusive, or perhaps very weighty, taken singly, but forming as a whole the fair basis of a conclusive inference by the jury in favor of payment. The jury was properly told that the burden of proof was on the defendants, and there was more than a scintilla in support of the latters' contention.

The whole controversy was reduced to a single question of fact, and that was left properly to the jury.

Judgment affirmed.